2023 IL App (1st) 211629-U

No. 1-21-1629

Order filed February 21, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ADRIENNE C. BARRON, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2020 CF 292 |
| FORD MOTOR COMPANY, ILLINOIS DEPARTMENT | ) | |
| OF HUMAN RIGHTS, and ILLINOIS HUMAN RIGHTS | ) | |
| COMMISSION, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission's order sustaining the Illinois Department of Human Rights' dismissal of petitioner's charge of disability-based discrimination and retaliation for lack of substantial evidence is affirmed. Berkowitz Oliver, LLP is dismissed as a respondent to the petition for administrative review.

¶ 2    On direct administrative review, petitioner Adrienne C. Barron appeals *pro se* from a final

decision entered by the Illinois Human Rights Commission (Commission) sustaining the Illinois

Department of Human Rights' (Department) dismissal of her charge of disability-based discrimination and retaliation against her former employer, respondent Ford Motor Company (Ford), pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Ford hired petitioner on October 18, 2010, and discharged her on May 8, 2019. On August 22, 2019, petitioner filed with the Department the instant charge against Ford, alleging disability-based discrimination and retaliation for having filed three prior discrimination charges against Ford between September 2017 and December 2017. Petitioner asserted that her work performance met Ford's expectations, and similarly situated, non-disabled employees were treated more favorably under similar circumstances.

¶ 5     The Department conducted an investigation of petitioner's charge. The Department's investigator interviewed petitioner and Heather Lange, Ford's labor relations representative. Exhibits included, among other documents, petitioner's verification of employment disability, a statement from petitioner's mother, Ford's employee policies regarding harassment, retaliation, and equal opportunity employment, and Lange's "Brief Summary" of Ford's internal investigation. In an investigation report dated February 11, 2021, the investigator recommended the dismissal of petitioner's charge based on a lack of substantial evidence. The report recounted as an uncontested fact that Ford hired petitioner in October 2010, and discharged her on May 8, 2019. The investigator noted that notice of petitioner's prior charges filed with the Department were mailed to Ford in September 2017, November 2017, and January 2018. In the report, the investigator

detailed the evidence submitted by both parties during the investigation, which we summarize below.

¶ 6    Petitioner reported to the investigator that Ford discharged her based on her disability (rheumatoid arthritis) and in retaliation for having filed three prior discrimination charges against Ford with the Department between September 2017 and December 2017. She reported that she was taken to Lange's office, where Lange asked petitioner if she was affiliated with a street gang and accused petitioner of "touching her crotch in front of her co-workers," "using profanity laden language," and propositioning women for "sexual favors." Petitioner asserted that all of the charges against her were part of a conspiracy by many former coworkers. She admitted to Lange that she had used profanity "only to defend herself when someone used it on her." Petitioner had also admitted to Lange that she told her coworkers her husband would come to the worksite "but that he would be non-threatening." She denied propositioning any coworkers for "sexual favors," but said it "has been others" who spoke to her using "sexual language."

¶ 7    Petitioner also reported to the investigator that a coworker named "Jerome (last name unknown)" "mistreated," "harassed," and "verbally assaulted" her. She reported that in one instance, she was accused of being "dirty with [a] lollipop," but stated a former coworker named " 'Big John' (name unknown)" handed lollipops to the women and was the one who "talked about how long it would take to ring pop [*sic*]." Petitioner told the investigator that on May 8, 2019, Lange called her and discharged her for "gross negligence." Petitioner filed a grievance with her union.

¶ 8    Petitioner further reported to the investigator that Ford was "out to get her ever since she filed charges" with the Department because "that's just how [Ford] does things." She stated that

Ford was "out to fire her because of her disability because that's how they treat people." She claimed that Lange's investigations were "unfair," as "all the reports were false" and Lange "fabricated evidence to get her fired." She further asserted that Ford was aware of her disability because she requested time off often.

¶ 9     Petitioner provided a verification of employment disability completed by Dr. Marco A. Lopez Velazquez on May 16, 2020. The verification reflected that petitioner suffered from rheumatoid arthritis, which was permanent and "not minor," and petitioner had been under the University of Chicago Hospital's care since October 7, 2016. Petitioner also provided a statement from her mother, who described petitioner as a "very thoughtful," "nice, kind, and loving person," who was the family's "main breadwinner" and "went to work every day when she could."

¶ 10    Lange reported to the investigator that she had no knowledge petitioner was a person with a disability or had filed charges with the Department in 2017. Lange decided to terminate petitioner "based solely" on the revelations from Ford's investigation. Lange denied fabricating evidence and stated all evidence collected in the course of the investigation was authentic.

¶ 11    Ford's equal opportunity policy provides that "no qualified disabled person shall be the subject of discrimination in employment." Ford does not track the disability status or protected status of its employees. Ford has a zero-tolerance policy for all harassment, including sexual and sex-based harassment, and provides that violations of the directive would result in discipline, which can include discharge. Ford's policy addressing its relationship with employees provides that it does not retaliate "against any witness making a complaint, participating or assisting in the investigation or proceeding, or opposing unlawful act, or engaging in any other protected activity."

¶ 12    According to Lange's "Brief Summary of Case For Complainant," witnesses came forward with multiple allegations against petitioner. Three witnesses confirmed that petitioner used profanity and racial slurs; five confirmed that she threatened coworkers; three confirmed that she displayed street gang signs to coworkers; three confirmed that she offered cash and gifts in exchange for sexual favors; and one confirmed that she had "made a pass" at a coworker. The allegations involved several events, including incidents in which petitioner referred to coworkers as " 'b***[es]' "; said " 'f*** you' " to coworkers; grabbed her crotch; displayed gang signs; used the " 'N' word"; had a "screaming match" with another individual in which petitioner used the phrase " 'black b***' at least three times"; propositioned a coworker with a ring and $100; told a coworker she would have her daughter " 'kick her a***' "; wrote a note to a coworker saying she "smelled good and to be careful smelling that way around her"; and told a coworker, " 'suck her d***, you are a lazy m***er, and I'm going to have my husband come kick your a***.' "

¶ 13    Ford also provided petitioner's disciplinary action report, stating that on May 8, 2019, at 8:45 a.m., petitioner was discharged by phone for "gross misconduct," "threats," and violating Ford's anti-harassment policy.

¶ 14    The Department's investigator concluded there was "no evidence" that Ford discharged petitioner based on her disability or out of retaliation for having filed prior charges of discrimination. The investigator found the evidence "overwhelming" that Ford discharged petitioner for violating its anti-harassment policies, noting 11 witnesses provided accounts of petitioner violating the policies. The investigator also noted that while the evidence showed petitioner was a person with a disability as defined in the Act, there was no evidence petitioner provided Ford with documentation reflecting that she had a disability. The investigator

recommended a finding of lack of substantial evidence as to petitioner's charge of disability-based discrimination and retaliation.

¶ 15    The Department dismissed petitioner's charge for lack of substantial evidence.

¶ 16    On May 18, 2021, petitioner filed a request for review with the Commission. She argued that the coworkers who "spoke lies against" her were in a " 'Big Conspiracy' " with Lange, and that Lange violated her civil rights as she was not given " 'due process.' " Petitioner also denied several of the allegations made against her. She referenced four charges filed with the Department, which concerned the "same incidents, time and place," to "give reference and comparisons to the different scenarios and narratives" in each of the Department's investigative reports. Petitioner attached to the request for review various documents, including pages from the Department's investigative reports and screenshots of text messages.

¶ 17    On June 21, 2021, the Department filed a response to petitioner's request for review, summarizing the findings made in its report. The Department asserted that its investigation revealed that Ford discharged petitioner for "legitimate non-discriminatory reasons" because she "engaged in extreme behavior" that violated Ford's anti-harassment policies.

¶ 18    On November 23, 2021, the Commission issued its final order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case that Ford discharged her based on her disability, as she did not proffer sufficient evidence that Ford knew about her disability or took action against her because of her disability. The Commission also found that Ford had articulated a legitimate, nondiscriminatory reason for discharging petitioner, as multiple witnesses reported that petitioner had violated Ford's anti-harassment policies. The Commission further found that petitioner failed

to make a *prima facie* case of retaliation, as she failed to establish a causal link between her prior charges filed with the Department in September, October, and December 2017 and her discharge from employment in May 2019.

¶ 19    Petitioner timely sought direct review of the Commission's final determination with this court.

¶ 20                                        II. ANALYSIS

¶ 21    As an initial matter, in her petition for direct administrative review filed in this court, petitioner names as respondents not only the Commission, the Department, and Ford, but also Berkowitz Oliver, LLP, the law firm which represented Ford before the agency. However, the record on appeal does not reflect that Berkowitz Oliver, LLP, was a party to the proceedings before the agency. Because Berkowitz Oliver, LLP, is neither an administrative agency nor a party of record to the proceedings before the administrative agency, it is not properly named as a party here. See 735 ILCS 5/3-113(b) (West 2020) ("The administrative agency and all persons, other than the petitioner, who were parties of record to the proceedings before the administrative agency shall be made respondents."); *Crawley v. Bd. of Educ.*, 2019 IL App (1st) 181367, ¶ 21. As such, we dismiss Berkowitz Oliver, LLP, as a respondent to the petition for administrative review. *Id.*

¶ 22    Further, we note petitioner's *pro se* brief on appeal fails to comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Petitioner's brief fails to: (1) demonstrate this court's jurisdiction; (2) reference the facts of the case without argument or comment; (3) include specific page citations to the record on appeal; and (4) set forth a clear legal argument supported by citation to pertinent legal authorities. *Id.* Rather, petitioner's 111-page opening brief consists of pages of handwritten factual arguments interspersed with portions of the record from

other cases and unidentified exhibits. While the pages of the brief appear to be out of order, petitioner has handwritten page numbers on most of the pages, suggesting the brief has been submitted in its intended page order.

¶ 23    Illinois Supreme Court rules have the force of law and must be followed. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). This court will not apply a more lenient standard for *pro se* litigants. *People v. Fowler*, 222 Ill. App. 3d 157, 163 (1991); see *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001) ("*Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures."). Where a party fails to comply with Rule 341, this court may, in our discretion, strike the brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. Here, however, we see no impediment to resolving this appeal notwithstanding the shortcomings of petitioner's brief as the record is not voluminous and we have the benefit of a cogent appellee's brief. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Accordingly, we choose to address the merits of this appeal.

¶ 24    On appeal, petitioner challenges the Commission's decision to sustain the Department's dismissal of her charge of disability-based discrimination and retaliation for having filed prior discrimination charges.

¶ 25    Under the Act, the Department conducts an investigation and may dismiss a charge upon a determination that there is no "substantial evidence" supporting the charge.[1] 775 ILCS 5/7A-102(C), (D)(3) (West 2018). The Act defines "substantial evidence" as "evidence which a

---

[1]We note that several sections of the Act have been amended after petitioner filed her complaint, none of which are material to our analysis of this appeal. Illinois Public Act 101-221 (eff. Jan. 1, 2020); Illinois Public Act 102-558 (eff. Aug. 20, 2021). As such, we rely on the version of the Act in effect as of August 2019, when petitioner filed her charge.

reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2018). "[M]ere speculation and conjecture does not constitute substantial evidence." *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). A petitioner may seek review of the Department's dismissal of the charge by either commencing a civil action in the circuit court or filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018). Where the Commission sustains the dismissal, the petitioner, as done here, may seek direct appellate review of the Commission's final determination. 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 26    On direct appellate review, this court is "empowered to review any and all questions of law or fact presented by the record." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000). We review the Commission's decision to sustain the Department's dismissal of a charge for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33.

¶ 27    As to petitioner's discrimination charge, the Act prohibits an employer from discharging or disciplining an employee based on unlawful discrimination and any such act constitutes a civil rights violation. 775 ILCS 5/2-102(A) (West 2018). "Unlawful discrimination" includes "discrimination against a person because of his or her actual or perceived *** disability." 775 ILCS 5/1-103(Q) (West 2018).

¶ 28 A petitioner bears the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. To establish a *prima facie* case of disability discrimination, the petitioner must demonstrate: "(i) she was disabled within the definition of the [Act]; (ii) her disability is unrelated to her ability to perform the functions of the job she was hired to perform; and (iii) an adverse job action was taken against her related to her disability." *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 37.

¶ 29 Once a *prima facie* case is established, "a rebuttable presumption arises that the employer unlawfully discriminated against the petitioner, and the employer may rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment decision." *Burns v. Bombela-Tobias*, 2020 IL App (1st) 182309, ¶ 58 (citing *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989)). If the employer carries its burden, the presumption of unlawful discrimination falls and the petitioner must prove, by a preponderance of the evidence, that the employer's articulated reason was "untrue and a pretext for discrimination." *Id.* (citing *Zaderaka*, 131 Ill. 2d at 179).

¶ 30 In this case, the Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of disability-based discrimination for "lack of substantial evidence." The Commission properly concluded that petitioner failed to establish a *prima facie* case of disability-based discrimination, where the record shows she presented no evidence that Ford had any knowledge of her disability and discharged her because of that disability.

¶ 31 Moreover, even had petitioner established a *prima facie* case, the evidence overwhelmingly demonstrated that Ford articulated "a legitimate, nondiscriminatory reason" for discharging

petitioner, asserting it discharged petitioner after multiple employees confirmed that she had displayed "gross misconduct" and violated Ford's zero-tolerance anti-harassment policies on multiple occasions. See *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 544-45 (2000) (it is not for this court to substitute its business judgment for that of the employer's). We further note that the record does not indicate petitioner submitted any evidence that Ford treated similarly situated, non-disabled employees who violated Ford's anti-harassment policies and threatened co-workers any more favorably than petitioner. Accordingly, the Commission properly sustained the dismissal of petitioner's charge for lack of substantial evidence based on her failure to establish a *prima facie* case of disability-based discrimination and Ford's articulated legitimate, nondiscriminatory reason for its decision to discharge petitioner. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 32    We next turn to petitioner's retaliation charge. Under the Act, an employer may not "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination." 775 ILCS 5/6-101(A) (West 2018). To establish a *prima facie* case of retaliation under the Act, the petitioner must show "(1) she was engaged in a protected activity; (2) her employer committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act." *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 40.

¶ 33    In this case, petitioner claimed that Ford discharged her on May 8, 2019, because she had filed three discrimination charges against Ford with the Department between September 2017 and December 2017. However, she failed to submit any evidence showing a causal nexus between her prior charges and her ultimate discharge from employment, particularly given the length of time

from when Ford would have received notice of the 2017 charges to when petitioner was discharged in 2019.[2] See *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773 (2002) (six-month period was "too long to establish a causal link without more"); see also *Maye v. Human Rights Comm'n*, 224 Ill. App. 3d 353, 362 (1991) (observing instances in which time frames were sufficiently short to support a causal nexus, including 16 days, 37 days, and "less than two months"). Rather, as we have noted, the evidence overwhelmingly showed that petitioner was discharged due to multiple incidents of misconduct that violated Ford's anti-harassment policies as reported and confirmed by her coworkers. We find that the Commission's order sustaining the Department's dismissal of petitioner's retaliation charge was not an abuse of discretion. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 34    We note that in her opening and reply briefs, petitioner raises new factual allegations not reflected in the record on appeal. However, under the Administrative Review Law, petitioner cannot ask this court to consider new or additional evidence that was not raised before the Commission. 735 ILCS 5/3-110 (West 2020) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court."). Therefore, we cannot consider the new allegations that petitioner failed to raise before the Commission.

¶ 35                                III. CONCLUSION

---

[2] The Department's investigator determined notices of the three charges were mailed to Ford in September 2017, November 2017, and January 2018.

¶ 36    For the foregoing reasons, we affirm the decision of the Commission sustaining the Department's dismissal of petitioner's charge of discrimination and retaliation and dismiss Berkowitz Oliver, LLP, as a respondent to the petition for administrative review.

¶ 37    Affirmed.