2023 IL App (1st) 220480-U

No. 1-22-0480

Order filed August 1, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ADRIENNE C. BARRON, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission |
| | ) | |
| v. | ) | Charge No. 2020 CA 1816 |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and FORD | ) | |
| MOTOR COMPANY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the decision of the Human Rights Commission sustaining the Department of Human Rights' dismissal of petitioner's race and age discrimination charge for lack of substantial evidence. We dismiss Berkowitz Oliver, LLP, and the United Auto Workers as respondents to the petition for administrative review.

¶ 2    Petitioner Adrienne C. Barron appeals *pro se* from a final decision of the Human Rights Commission (Commission) sustaining the Department of Human Rights' (Department) dismissal of her race and age discrimination charge. We affirm.

¶ 3    The record reveals that petitioner was hired by respondent Ford Motor Company on October 18, 2010, and discharged on May 8, 2019.

¶ 4    In March 2020, petitioner filed a charge of discrimination alleging that respondent discharged her because of her race, age, and disability. Petitioner asserted she was black, age 52, and suffered from rheumatoid arthritis. She alleged that her work performance met respondent's expectations, and that similarly situated younger, non-black, non-disabled employees were treated differently under similar circumstances.

¶ 5    The Department conducted an investigation of petitioner's charge of race and age discrimination. The Department did not investigate the charge pertaining to the disability of rheumatoid arthritis as a finding regarding that allegation had already been made in charge number 2020 CF 0292.[1]

¶ 6    The Department's investigator interviewed petitioner and respondent's senior labor relations representative Heather Lange. Exhibits to the investigator's February 26, 2021, report included respondent's 2018 "EEO Report," "Anti-Harassment Directive," and "Complaint Procedure," as well as "Disciplinary Action Reports" for petitioner, Yamile Macklin, Billie Johnson, and two other employees of respondent. Also included were a portion of an agreement between respondent and the United Auto Workers (UAW),  and Lange's "Brief Summary of Case"

---

[1] The Department dismissed this charge for lack of substantial evidence, the Commission sustained the dismissal, and this court affirmed. *Barron v. Ford Motor Co.*, 2023 IL App (1st) 211629-U.

reports as to petitioner, and as to Macklin and Johnson. None of the attachments are included in the record on appeal, but the investigator's report summarizes their content.

¶ 7     In the report, the investigator recommended that petitioner's charge of race and age discrimination be dismissed based upon a lack of substantial evidence. The report recounted the following uncontested facts.

¶ 8     On October 18, 2010, respondent hired petitioner. In February 2019, coworker Jerome Smith accused petitioner of inappropriate behavior. On February 18, 2019, respondent began investigating claims that petitioner behaved inappropriately toward her coworkers. During this investigation, petitioner informed respondent that Macklin, a non-black 35-year old, and Johnson a non-black 44-year old, engaged in inappropriate activity at work. Macklin and Johnson were discharged on May 6, 2019, and petitioner was discharged on May 8, 2019.

¶ 9     The investigator detailed additional evidence submitted by both parties, which we summarize below.

¶ 10     Petitioner reported to the investigator that on February 13, 2019, while she was working as an inspector, an employee distributed Valentine's Day lollipops. Smith told petitioner, " 'Damn girl, the way you suck, I'd come all over myself.' " Petitioner told Smith the comment was "uncalled for" but did not report it because she feared retaliation.

¶ 11     The following day, Smith asked petitioner to fix parts that he missed on a door. She declined because her instructions that day were to inspect only. Smith became angry. He then asked petitioner to fix the parts later in the workday. She agreed, but reminded Smith that her instructions were to focus on inspection. Smith then called petitioner lazy, and she responded that when a "real man" came to work, he did his job rather than harass people. Smith told petitioner,

" 'F*** you b***,' " and " 'F*** you d*** a*** b***.' " Petitioner stated she did not have time for Smith and walked away. For the next 22 minutes, Smith cursed at petitioner whenever she moved into his eyesight. Macklin asked Smith what his problem was and told Smith to leave petitioner alone. A group leader witnessed Smith's behavior but ignored it. Smith cursed at petitioner again at the end of the day, so she went to report him. However, the facility was crowded and she decided to make a report the following Monday.

¶ 12    On February 18, 2019, Lange told petitioner that another employee reported that petitioner stated, " 'If this sucker was a penis, I would suck it.' " This employee also told Lange that petitioner threatened the employee, asked female employees for their phone numbers, cursed at a female employee, grabbed a female employee's genital area, and cursed at another person. Petitioner denied the allegations. Petitioner told Lange that Smith became angry when petitioner would not help him, was argumentative, cursed, and made sexual comments directed at petitioner. She further stated that Lorri Ellison and "Big John" were witnesses. Lange told petitioner that an investigation would be conducted and petitioner was suspended in the interim.

¶ 13    Petitioner stated that she was not asked any more questions during the investigation and was thereafter unable to reach anyone at respondent. Ellison told petitioner that during the investigation, she told respondent that petitioner did not do what Smith accused petitioner of doing, and that Ellison was thereafter harassed by respondent. Ellison told petitioner that another individual, Mike Brown, witnessed the incident, but respondent did not allow Brown to make a statement during the investigation.

¶ 14    On May 8, 2019, respondent told petitioner that she was being discharged for gross negligence, threats, and sexual harassment. Petitioner told the investigator that she was discharged

due to her race because Lange, a white woman, accused and interrogated her as if she were guilty. She further stated that she was discharged due to her age and race because on February 18, 2019, petitioner told Lange that she wanted to make a complaint against Macklin and Johnson for being intimate during lunch breaks. Petitioner stated that, although Macklin and Johnson were terminated on May 6, 2019, they were reinstated around July 18, 2019. Petitioner finally stated that she was discharged due to her age because respondent knew she would not be able to collect her pension once discharged.

¶ 15 Respondent's Anti-Harassment Directive stated that respondent prohibits sexual harassment and discrimination on the basis of race or age. Respondent's Complaint Procedure stated that to report a violation of the anti-discrimination policy, an employee must alert the employee's supervisor or manager, the local human resources (HR) representative, respondent's harassment hotline, or the Corporate Personnel Relations and Employee Policies Office. If the employee is a member of a collective bargaining unit, he or she may file a grievance through the collective bargaining grievance procedure. Once a complaint is received, HR begins an investigation within 24 hours. If the investigation determines that an employee engaged in conduct which violated the anti-discrimination policy, penalties range from a verbal warning to discharge.

¶ 16 Lange told the investigator that she was not aware of petitioner's age. Petitioner was discharged after an investigation into her conduct confirmed, through witnesses' "evidence," that she made multiple threats to coworkers, used profanity and racial slurs, grabbed her crotch, and sexually harassed others.

¶ 17 Lange stated that the investigation began when a "visibly shaken" Smith came to her office to file a complaint on February 18, 2019. Smith alleged that on February 13 and 14, 2019,

petitioner threatened him, used racial slurs and gang signs, followed Smith off the floor yelling, and followed him to the labor office. Smith was concerned for his safety. Lange stated that witnesses confirmed that petitioner used profanity, grabbed her crotch, and used gang signs and racial slurs. Additionally, the investigation revealed that petitioner engaged in sexual harassment and told coworkers that her daughter would "beat them up."

¶ 18    Lange stated that Ellison confirmed there was an incident involving ring pop candy between petitioner and Smith, and that petitioner, who was upset that day, had a confrontation with others. Ellison stated that she heard Smith use profanity, but was unable to remember what petitioner said, as Ellison was stressed. Brown's name was not provided until April 9, 2019, two months after the investigation began. Brown did not inform respondent that he wanted to be involved in the investigation.

¶ 19    Lange's "Brief Summary of Case" dated May 13, 2019, contained a summary of the allegations as to petitioner's behavior during the previous two years with the names of witnesses redacted. Three witnesses confirmed that petitioner used profanity and/or racial slurs in the past. Five witnesses confirmed that petitioner threatened other employees including three instances where petitioner told an employee that petitioner's daughter would beat that employee. Three witnesses confirmed that petitioner used gang signs and/or references. Three witnesses confirmed that petitioner offered payment for sexual favors, including propositioning one employe with a ring and cash. One witness confirmed that petitioner flirted with him by asking how long it would take her to finish a ring pop, and he responded that he was not interested and would tell his wife.

¶ 20    Lange stated that she took petitioner's statement regarding Macklin and Johnson on February 18, 2019. Petitioner told Lange that Macklin and Johnson constantly argued, that Macklin

rubbed Johnson's breasts and legs, and that Johnson groped Macklin. An investigation into Macklin's and Johnson's conduct began on February 18, 2019. Macklin and Johnson were discharged for violating respondent's anti-harassment policy by acting in a sexually inappropriate manner with another employee on May 6, 2019. They were not suspended and were not reinstated following discharge.

¶ 21 Petitioner's "Disciplinary Action Report," dated May 8 and 9, 2019, stated that petitioner was discharged on May 8, 2019, following an investigation which revealed that she made multiple threats to coworkers, and violated respondent's anti-harassment policy by sexually harassing employees and using profanity and racial slurs.

¶ 22 Additional disciplinary reports indicated that on July 11, 2018, an employee was discharged for hitting his supervisor, and that another employee was discharged after an investigation revealed that the employee violated the anti-harassment and "zero tolerance" policy by " 'smacking friends on the behind.' "

¶ 23 The agreement between respondent and UAW stated that respondent has the sole right to discipline and discharge employees for cause.

¶ 24 In rebuttal, petitioner stated that Lange said that Smith was afraid and concerned, but Lange did not take statements from Big John or another witness, Maria Isreal. Petitioner further stated that, during the incident on February 14, 2019, she only told Smith " 'No f*** you' " and did not speak to Ellison about anything that day.

¶ 25 The investigator's report stated that it was uncontested that Smith accused petitioner of behaving inappropriately which triggered an investigation into petitioner's behavior. During that investigation, petitioner informed respondent of Macklin's and Johnson's behavior. Petitioner was

thereafter discharged for threatening coworkers and violating respondent's anti-harassment policy. The report therefore concluded that petitioner failed to show that respondent discharged her due to her race or age. The evidence showed that, prior to her discharge, petitioner displayed inappropriate behavior toward her coworkers, such as by threatening and sexually harassing them. Moreover, respondent's records showed that respondent discharged three non-black employees and two employees under the age of 40 in the 12 months prior to petitioner's discharge.

¶ 26     On March 1, 2021, the Department dismissed petitioner's charge of race and age discrimination for lack of substantial evidence.

¶ 27     On June 4, 2021, petitioner filed a request that the Commission review the dismissal. In the request, petitioner asked permission to use the investigative reports from four previously filed discrimination charges to give "comparisons to the different scenarios and narratives in each of the *** investigative reports" and to show "inconsistencies, discrepancies, and contradictions." Petitioner also alleged that Lange did not consider that Ellison was harassed and retaliated against by a union representative, failed to interview Brown, and believed Smith's "false complaint" rather than reprimanding him. Petitioner included copies of text messages with Ellison, emails and correspondence, a mailing from the Social Security Administration, and documents from other proceedings before the Department, which petitioner highlighted and annotated.

¶ 28     The Department filed a response stating that its investigation did not reveal that respondent discharged petitioner due to her race or age. Rather, petitioner was discharged after coworkers reported that petitioner threatened them, used racial slurs and profanity, and made gang signs, and the allegations were confirmed through an investigation. Respondent has a good faith belief petitioner's conduct was inappropriate and threatening. Moreover, the Department's investigation

did not reveal, and petitioner did not provide, any evidence that respondent did not discharge a similarly situated younger, non-black employee who engaged in comparable conduct. To the contrary, the Department's investigation revealed that respondent had discharged younger, non-black employees who engaged in inappropriate conduct.

¶ 29  On March 8, 2022, the Commission sustained the dismissal of the charge for lack of substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case that respondent discharged her based upon her race or age, noting that petitioner did not identify similarly situated employees outside her protected class who were not discharged under similar circumstances. While petitioner asserted that Macklin and Johnson were treated more favorably, respondent confirmed that they were discharged for misconduct and not reinstated.

¶ 30  On April 8, 2022, petitioner filed a timely *pro se* petition for direct administrative review in this court. See 775 ILCS 5/8-111(B)(1) (West 2020) (a petitioner may "obtain judicial review of a final order of the Commission *** by filing a petition for review in the Appellate Court within 35 days from the date that a copy of the decision *** was served upon the party affected"). Rule 335(a) (eff. July 1, 2017) governs the procedures for this court's review of decisions of the Commission. Ill. S. Ct. R. 335, Committee Comments (rev. Dec. 17, 1993) ("Rule 335 prescribes the procedure for the review of orders of any agency which the legislature has assigned to the Appellate Court." "The General Assembly has provided by law that *** a decision from the Illinois Human Rights Commission (775 ILCS 5/8-111 (West 1992)) *** may be appealed directly to the Appellate Court.").

¶ 31  As an initial matter, in her petition for direct administrative review, petitioner names as respondents not only the Commission, the Department, and respondent, but also law firm

Berkowitz Oliver, LLP, and UAW. The record on appeal does not reflect that Berkowitz Oliver, LLP, and UAW were parties to the proceedings before the agency. Because Berkowitz Oliver, LLP, and UAW are neither an administrative agency nor a party of record to the proceedings before the administrative agency, they are not properly named as parties in this court. See Ill. S. Ct. R. 335(a) (eff. July 1, 2017) ("the petition for review *** shall specify the parties seeking review and shall designate the respondent and the order or part thereof to the reviewed. *The agency and all other parties of record shall be named respondents.*" (Emphasis added.)). As such, we dismiss Berkowitz Oliver, LLP, and UAW as respondents to the petition for administrative review.

¶ 32    Further, our review of petitioner's appeal is hindered by her failure to fully comply with Illinois Supreme Court Rule 341(h), which provides that an appellant's brief should contain a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment," and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). Here, petitioner's briefs provide no citations to the record and fail to articulate a legal argument which would allow a meaningful review of her claims. Moreover, petitioner has included within her briefs pages from other proceedings upon which she has made handwritten notes and documents which were not before the administrative agency. However, on administrative review, this court cannot consider evidence that was not before the administrative agency. See 735 ILCS 5/3-110 (West 2020).

¶ 33    Considering the content of petitioner's briefs, it would be within our discretion to dismiss this appeal. See *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). However, because it is clear that petitioner challenges the dismissal of her charge of race and age discrimination, and we have

the benefit of a cogent appellee's brief, we choose to consider the discernible merits of the appeal.[2] See *Twardowski v. Holiday Hospitality Franchising, Inc*., 321 Ill. App. 3d 509, 511 (2001).

¶ 34     On appeal, petitioner contends that she was treated less favorably than Smith, Macklin, and Johnson, and that Ellison was coerced into changing "key evidence." She further argues that the Department violated her rights in five cases filed between March 28, 2019, and March 2, 2020.[3]

¶ 35     Upon the filing of a discrimination charge, the Department must conduct an investigation of the allegations and prepare a written report. 775 ILCS 5/7A-102(C), (D) (West 2020). The Department must then review the report to determine whether there is "substantial evidence" that the alleged discrimination occurred. 775 ILCS 5/7A-102(D)(2) (West 2020). Substantial evidence is "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." *Id*.; see also *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999) ("mere speculation and conjecture does not constitute substantial evidence"). If the Department determines that there is no substantial evidence to support the allegation, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2020). A petitioner may then request the Commission review the Department's determination. *Id*. If the Commission sustains the dismissal, the petitioner may seek review in the appellate court. 775 ILCS 5/8-111(B)(1) (West 2020).

---

[2] Petitioner's briefs on appeal do not raise any specific arguments regarding her claim of disability discrimination.

[3] In her reply brief, petitioner further argues that because she was never arrested, she could not have sexually harassed anyone. She also proposes several settlements for resolving her claims against respondent. However, we will not consider arguments raised for the first time in a reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief ***.").

¶ 36    We review the decision of the Commission, rather than that of the Department. *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 519 (1997). The Commission's findings of fact are entitled to deference and "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2020). However, the Commission's ultimate decision to sustain the dismissal of a charge will be reversed only if the decision was arbitrary and capricious or an abuse of discretion. *Stone v. Department of Human Rights*, 299 Ill. App. 3d 306, 314 (1998). "A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be considered as a result of the exercise of the agency's expertise." *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33. Under this standard, we "may not reweigh the evidence or substitute our judgment for that of the Commission." *Id.*

¶ 37    The Act probits an employer from discharging or disciplining an employee based on unlawful discrimination and any such act constitutes a civil rights violation. 775 ILCS 5/2-102(A) (West 2020). "Unlawful discrimination" includes "discrimination against a person because of his or her actual or perceived: race *** [or] age." 775 ILCS 5/1-103(Q) (West 2020).

¶ 38    When an employee alleges a violation of the Act based on unlawful discrimination by an employer, we generally apply the three-prong test set forth in *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172 (1989), which is based on the framework employed by federal courts in employment discrimination cases. See *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 33. First, the petitioner must establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Zaderaka*, 131 Ill. 2d at 178-79. If the petitioner successfully establishes a *prima facie* case, a rebuttable presumption arises that the employer unlawfully

discriminated against the petitioner. *Id.* at 179. In order to rebut the presumption, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Id.* If the employer carries its burden of production, the presumption of unlawful discrimination falls and the petitioner must then prove by a preponderance of the evidence that the employer's articulated reason was false and was actually a pretext for unlawful discrimination. *Id.* Whether an employer's articulated reason is pretextual is a question of fact. *Id.* at 180.

¶ 39    To establish a *prima facie* case of employment discrimination, a petitioner must show that (1) she belongs to a protected class, (2) she was meeting her employer's legitimate business expectations, (3) she suffered an adverse employment action, and (4) the employer treated similarly situated employees outside the class more favorably. *Spencer*, 2021 IL App (1st) 170026, ¶ 34.

¶ 40    In the case at bar, the Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of race and age discrimination for a lack of substantial evidence. The Commission properly concluded that petitioner failed to establish a *prima facie* case that she was unlawfully discharged based upon her race and age, when the evidence did not show that respondent treated similarly situated non-black, younger employees more favorably. Rather, the evidence demonstrated that respondent discharged petitioner after its investigation confirmed, through the statements of multiple employees, that petitioner violated respondent's anti-harassment policy on multiple occasions by threatening coworkers, and violated respondent's anti-discrimination policy by sexually harassing coworkers and using profanity and racial slurs. See *Sola v. Illinois Human Rights Comm'n*, 316 Ill. App. 3d 528, 544-45 (2000) (it is not for this court to substitute its business judgment for that of an employer).

¶ 41   Moreover, the record does not indicate that petitioner submitted evidence establishing that respondent treated similarly situated non-black, younger employees who threatened and sexually harassed coworkers and used profanity and racial slurs more favorably than petitioner. To the contrary, the record reveals that Macklin, a non-black 35-year old, and Johnson, a non-black 44-year old, were discharged after an investigation confirmed that they engaged in sexually inappropriate behavior in violation of respondent's anti-harassment policy. To extent that petitioner argues that respondent treated her less favorably than Smith, whom respondent treated as petitioner's victim, it is unclear how they were similarly situated. Accordingly, the Commission properly sustained the dismissal of petitioner's charge of race and age discrimination for lack of substantial evidence based on her failure to establish a *prima facie* case of race and age-based discrimination and respondent's articulated legitimate, nondiscriminatory reason for its decision to discharge petitioner. *Young*, 2012 IL App (1st) 112204, ¶¶ 34, 36.

¶ 42   Petitioner's other arguments, including that Ellison was coerced to change "key evidence" and that the Department violated petitioner's rights in prior cases, do not address the reason that her charge was dismissed and are unsupported by relevant authority. As such, we find that the Commission did not abuse its discretion in sustaining the Department's dismissal of the charge, and petitioner's challenge to the Commission's decision therefore fails. See *id.* ¶ 33.

¶ 43   For the reasons explained above, we affirm the decision of the Commission sustaining the Department's dismissal of petitioner's charge of race and age discrimination and dismiss Berkowitz Oliver, LLP, and UAW as respondents to the petition for administrative review.

¶ 44   Affirmed.